# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RONALD McCLARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV23 |
| | ) | |
| FNU BULLOCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon Plaintiff Ronald McClary's motion for default judgment (Docket Entry 59), Defendant Connie Locklear-Jones, M.D.'s motion for summary judgment (Docket Entry 60) and Defendant Letitia Owen's motion for summary judgment (Docket Entry 64). Also before the Court is Plaintiff's motion for leave to file a surreply. (Docket Entry 71.) For the reasons that follow, the undersigned will recommend that Defendants' motions for summary judgment be granted. Furthermore, Plaintiff's motion for default judgment, construed as a motion for entry of default, and motion for leave to file a surreply, will be denied.

## I.  BACKGROUND

Plaintiff is a *pro se* prisoner of the State of North Carolina and was previously incarcerated at Scotland Correctional Institution (hereinafter "Scotland"). (*See* Complaint

Docket Entry 2 at 4.)[1] In January of 2019, Plaintiff filed a Complaint alleging Eighth Amendment violations that occurred at Scotland between August 15, 2018, and November 23, 2018. (*Id.* at 3-4.) Defendants Locklear-Jones, Owen, and FNU Bullock were all employed by the North Carolina Department of Public Safety (hereinafter "NCDPS") during the relevant time period.[2] (*Id.* at 2-3.) Plaintiff seeks compensatory and punitive damages against Defendants in their official and individual capacities for the alleged violations. (*Id.* at 2-4, 6.)

Plaintiff's original Complaint generally alleges that he suffers from a number of chronic medical ailments, including an enlarged prostate, a "bladder problem," high blood pressure, gastroesophageal reflux disease ("GERD"), helicobacter pylori ("H. pylori"), and a deteriorating disc disease. (*Id.* at 6.) According to Plaintiff, Defendants were responsible for Plaintiff's failure to receive medical treatment for these conditions, which resulted in "a worsening of all ailments." (*Id.*) More specifically, Defendant FNU Bullock, a nurse, denied and delayed administration of Plaintiff's medication, while Defendant Owen as the nurse supervisor "ignored repeated request[s]" for Plaintiff to obtain medical treatment for his

---

[1] Unless otherwise noted, all citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] Plaintiff's pleadings at times erroneously identify Defendant Owen as "Owens" (*see, e.g.,* Docket Entry 2 at 2, Docket Entry 10 at 2; *see also* Docket Entry 43 (Defendant Owen's Answer)) and Defendant Locklear-Jones as "Johnson" or "Jones" (*see, e.g.,* Docket Entry 2 at 3, Docket Entry 10 at 3; *see also* Docket Entry 42 (Defendant Locklear-Jones's Answer)). Relatedly, on January 10, 2019, Plaintiff filed a letter with the Court indicating that he incorrectly identified and referred to Defendant Locklear-Jones as "Dr. Johnson" in the Complaint and requested that the caption be corrected. (Docket Entry 3.) On February 19, 2019, the Court entered a Text Order allowing the substitution of "FNU Johnson" for Defendant Locklear-Jones. (Text Order dated 2/19/2019.) Consistent with that Order and for the sake of clarity, the undersigned consistently refers to Defendants Owen and Locklear-Jones by their correct names throughout this order, memorandum opinion, and recommendation.

illnesses. (*Id.* at 5.) In addition, Defendant Locklear-Jones failed to treat Plaintiff, and failed to follow the treatment regimen of previous medical doctors. (*Id.*)

On February 13, 2019, Plaintiff filed a "Motion to Leave," docketed as a supplemental complaint, in which he provided more detailed allegations that Defendant Locklear-Jones discontinued Plaintiff's prescribed medications (Amitriptyline,[3] Naproxen, Terazosin) for no reason, without evidence of misuse by Plaintiff, and despite never examining him. (*See* Docket Entry 6 at 1-2.) Plaintiff further states that Defendant Locklear-Jones failed to renew his extra mattress. (*Id.* at 2.) Plaintiff also filed several medical documents. (*See* Docket Entry 6-1.)

On February 22, 2019, Plaintiff filed an Amended Complaint alleging additional complaints of non-treatment of pain in his right shoulder and a deteriorating disc in his back. (Docket Entry 10.) Plaintiff alleges that Defendant Locklear-Jones declined to follow a pain management plan for his shoulder developed by Plaintiff's previous physician (Dr. Lindsey deGhuehery) and did not see Plaintiff to address his condition. (*Id.* at 4-5.) Plaintiff also alleges that Defendants Owen and FNU Bullock knew of Defendant Locklear-Jones' actions and failed to respond. (*Id.* at 5.) Plaintiff also submitted a declaration reiterating Defendants' conduct and expanding the relevant period from August 15, 2018, through February 8, 2019. (*See* Docket Entry 11.)

On March 25, 2019, Plaintiff filed yet another amended pleading again alleging that between August 15, 2018, and February 8, 2019, Defendant Locklear-Jones discontinued

---

[3] Amitriptyline is a generic brand of Elavil. *See* webmd.com/drugs/2/drug-8611/amitriptyline-oral/details (last visited Oct. 12, 2021).

Plaintiff's medications without justification. (Docket Entry 15.) However, Plaintiff attached medical records to his pleading showing that his renewal request for Elavil, Naproxen, and Terazosin was "denied due to multiple bottles of Naproxen and Terazosin in [Plaintiff's] possession," and that his Elavil had been discontinued due to his refusal to take on a previous date. (*Id.* at 8.)

On March 27, 2019, Plaintiff filed two additional letter pleadings alleging that someone at Scotland ripped up grievances, that the "defendants" were obstructing justice by "evading service" (Docket Entry 16), and that his medications were willfully withheld (Docket Entry 17 at 1-2.) Plaintiff further indicates that a search of his cell would make it appear that he was "hoard[ing] pills," though he denies doing so. (*Id.* at 1.) He also alleges that the prison nurse staff were not properly documenting the administration of his medications on the medication administration registers ("MARs") but they were instead indicating that Plaintiff was refusing meds. (*Id.*) He further alleges that all his chronic medications were discontinued at Scotland under false pretenses, and without seeing Defendant Locklear-Jones during a 7-month period. (*Id.* at 3.)

On June 3, 2019, Defendant Owen filed a motion to dismiss for failure to state a claim upon which relief can be granted. (Docket Entry 25.) Defendant Owen noted that Plaintiff filed two amended complaints, the second of which superseded all other previous pleadings and contained no substantive allegations against Defendant Owen. (Docket Entry 26.) On January 6, 2020, the undersigned issued an Order, Memorandum Opinion and Recommendation in which it clarified that Plaintiff's amended complaints/pleadings were supplemental pleadings, not superseding ones. (Docket Entry 40 at 4-5.) The Court adopted

the Recommendation on February 6, 2020. (Docket Entry 44.) Plaintiff filed a motion for default judgment on July 22, 2021, apparently against Defendant FNU Bullock for her alleged failure to answer in this matter. (*See* Docket Entry 59.)[4]

Shortly thereafter, Defendants Locklear-Jones and Owen moved for summary judgment, arguing that there are no genuine issues of material fact which support Plaintiff's claim of an alleged violation of his constitutional rights. (Docket Entries 60, 64.)[5] In further support of their motions for summary judgment, Defendants each submitted affidavits and declarations with attached exhibits. (*See* Affidavit of Connie Locklear-Jones, M.D. ("Locklear-Jones Aff."), Docket Entry 62; Declaration of Letitia Owen ("Owen Decl."), Docket Entry 64-1.)

Turning first to Defendant Locklear-Jones, she is a medical physician and was employed by NCDPS at all times relevant to this matter. (Locklear-Jones Aff. ¶ 2.)[6] Defendant Locklear-Jones notes that on August 15, 2018, Plaintiff was transferred to Scotland from Alexander Correctional Institution and had the following medications: Pyridium (medication used to relieve symptoms caused by irritation of the urinary tract), multivitamin, Flomax, Lactulose, analgesic balm, Tegretol (also known as Carbamazepine), Hyrin (relieves symptoms of GERD), Naproxen (nonsteroidal anti-inflammatory medication), Proscar

---

[4] The motion does not identity the defendant, however Defendant FNU Bullock is the only remaining defendant in this action outside of Defendants Locklear-Jones and Owen.

[5] While Defendant Owen sheds light on a "Gatekeeper Order" issued by the North Carolina Industrial Commission due to Plaintiff filing numerous claims without merit, said order was not attached to Defendant Owen's brief. (*See* Docket Entry 65 at 2.) The undersigned will not and need not address this point any further.

[6] Defendant Locklear-Jones states that she had no involvement with Plaintiff while he was incarcerated in other facilities outside of Scotland and, therefore, did not provide any treatment to Plaintiff between the dates of February 8, 2019 through March 25, 2019, when he was housed at Eastern Correctional Institution ("Eastern"). (Locklear-Jones Aff. ¶ 4.)

5

(urinary retention medication), Lisinopril, Elavil, Prilosec (proton-pump inhibitor used to relieve symptoms of GERD), and Aspirin. (*Id.* ¶ 8.) At the time, all of his medications continued as prescribed. (*Id.*; *see also* Ex. 4., Docket Entry 62-4.)

Defendant Locklear-Jones states that she did not personally examine Plaintiff between August 15, 2018 and March 25, 2019, and was not Plaintiff's primary care provider for the majority of the time that he was housed at Scotland; rather, PA Elaine Dimicco was Plaintiff's primary care provider. (Locklear-Jones Aff. ¶¶ 5, 27.) For Plaintiff's routine medical care and complaints, PA Dimicco served as Plaintiff's primary medical provider. (*Id.* ¶ 26.) As a result, Defendant Locklear-Jones was only involved in Plaintiff's care on occasions when PA Dimicco was on vacation, Plaintiff's chart was inadvertently referred to her, or she was engaged in chart reviews. (*Id.* ¶¶ 26, 27.) Thus, on the few occasions when Plaintiff's chart was referred to Defendant Locklear-Jones to review, she avers that she reviewed it for the purpose for which it was sent, made appropriate medical decisions based on the referral issue, and/or referred Plaintiff to his primary care provider. (*Id.* ¶ 5.)

Specifically on September 10, 2018, after Plaintiff refused to take his dose of Elavil, a nurse advised Plaintiff to continue to take the medication and to submit a Sick Call Appointment Request so that he could be seen by a provider and his complaints could be addressed. (*Id.* ¶ 9; *see also* Ex. 5, Docket Entry 62-5.) However, Plaintiff refused so the nurse then explained to Plaintiff that his condition might deteriorate causing debilitation and leading to increased pain. (Locklear-Jones Aff. ¶ 9.) Plaintiff maintained his refusal. (*Id.*) The nurse then referred Plaintiff's chart to Defendant Locklear-Jones solely for review of his refusal of Elavil. (*Id.*) On September 12, 2018, Defendant Locklear-Jones conducted a review of

6

Plaintiff's chart and based on his refusal to take Elavil, Defendant Locklear-Jones decided it was appropriate to discontinue the medication. (*Id.*)

On October 26, 2018, Defendant Locklear-Jones conducted a review of Plaintiff's chart in connection with a nurse's referral pertaining to Plaintiff's request to change administration of his Naproxen medication from "direct observation therapy" (DOT) to "keep on person" (KOP). (*Id.* ¶¶ 11-12; *see also* Exs. 7-8, Docket Entries 62-7, 62-8.) As Defendant Locklear-Jones was not Plaintiff's primary care provider, she decided to alert PA Dimicco about the request so that PA Dimicco could determine if the change was appropriate. (Locklear-Jones Aff. ¶ 12.) Defendant Locklear-Jones did not enter any other orders or notes in connection with this referral, but PA Dimicco subsequently discontinued to the DOT order and entered the KOP order. (*Id.*)

On December 17, 2018, Plaintiff was scheduled for a urology consultation, however, he refused the appointment. (*Id.* ¶ 16; *see also* Ex. 12, Docket Entry 62-12.) He feared he would experience back pain due to the travel time to the appointment. (Locklear-Jones Aff. ¶ 16.) Plaintiff signed the NCDPS Medical Treatment Refusal form which was referred to Defendant Locklear-Jones to review since PA Dimicco was on vacation for the holidays. (*Id.*) A few days later, Defendant Locklear-Jones reviewed Plaintiff's chart and, because he had refused the appointment, she entered an order to discontinue the UR Request for the urology consultation. (*Id.* ¶ 17.) Defendant Locklear-Jones also entered a note on Plaintiff's chart informing PA Dimicco of the action and PA Dimicco reviewed it several days later. (*Id.*)

On January 24, 2019, Plaintiff was scheduled for a routine chronic disease appointment in the Chronic Disease Clinic with a nurse. (*Id.* 21; *see also* Ex. 16, Docket Entry 62-16.)

7

Case 1:19-cv-00023-CCE-JLW   Document 74   Filed 10/13/21   Page 7 of 20

However, he refused the appointment.  (*Id.*)  Even after speaking with a nurse, Plaintiff maintained his refusal and refused to sign a Medical Treatment Refusal form.  (Locklear-Jones Aff. ¶ 21.)  On February 1, 2019, Defendant Locklear-Jones reviewed Plaintiff's chart regarding his refusal to attend his Chronic Disease Clinic visit and medications prescribed for the same.  (*Id.* ¶ 22; *see also* Ex. 17, Docket Entry 62-17.)  Defendant Locklear-Jones is unclear why the chart was referred to her rather than PA Dimicco.  (Locklear-Jones Aff. ¶ 21 n.16.)  However, Defendant Locklear-Jones nevertheless reviewed the chart and noted that Plaintiff had been prescribed multiple medications for which he had not submitted refill requests, indicating that he was not compliant with his medication regimen as prescribed.  (*Id.* ¶ 22.)[7]  In addition, at least one prescription (Tamsulosin) was not refilled in a timely fashion.  (*Id.*)

Defendant Locklear-Jones ultimately concluded that since Plaintiff was not taking his medications as prescribed and had not requested refills of his medications per NCDPS policy, this indicated that the medications were not medically necessary.  (*Id.*)  She therefore entered an order discontinuing the prescriptions for Terazosin, Vitamin C, the multivitamin, Tamsulosin, Naproxen, and Finasteride.  (*Id.*)  Defendant Locklear-Jones informed PA Dimicco of her actions and, a few days later, PA Dimicco reviewed and cosigned the note and discontinuation orders.  (*Id.*)[8]

---

[7] There appear to be a scrivener's error regarding prescription dates referenced in Defendant Locklear-Jones's affidavit.  Notwithstanding such, a review of the MARs confirms the lack of refill requests.  (*See* Ex. 17, Docket Entry 62-17 at 5-17.)

[8] In her affidavit, Defendant Locklear-Jones further explained the medical care Plaintiff received upon his transfer to Bertie Correctional Institution on February 8, 2019.  (Locklear-Jones Aff. ¶ 25; *see also* Ex. 20, Docket Entry 62-20.)  Between February 8, 2019, through March 25, 2019, the date Plaintiff filed his Second Amended Complaint, Plaintiff remained housed at Bertie.  (Locklear-Jones Aff. ¶ 25.)  However, Defendant Locklear-Jones did not provide any treatment to Plaintiff during that time.  (*Id.*)

Defendant Locklear-Jones avers that at no time did she disregard Plaintiff's symptoms and/or concerns, but to the contrary, took appropriate action and made professional decisions and recommendations based on his complaints and/or his refusals and non-compliance with medication orders. (*Id.* ¶ 27.) She further states that none of her actions were taken for the purpose of causing harm to Plaintiff, nor did Defendant Locklear-Jones ignore Plaintiff's medical needs or deny him any necessary treatment for any alleged medical condition. (*Id.*)

As to Defendant Owen, she is a Registered Nurse and was employed as a Nurse Supervisor III at Scotland during the relevant time period. (Owen Decl. ¶¶ 2, 7.) As a Nurse Supervisor, Defendant Owen supervised the nurses providing direct care to the inmates at Scotland; however, she generally did not provide direct care to inmates. (*Id.* ¶ 8.) On one occasion, Defendant Owen did have a clinical encounter with Plaintiff in January of 2019 in which she provided him with a plastic medical cup. (*Id.* ¶ 9; Ex. A, Docket Entry 64-2.) This was Defendant Owen's only personal involvement with Plaintiff. (Owen Decl. ¶ 14.)

Beyond that, she reviewed Plaintiff's medication records which revealed that during the period from September 12, 2018, through February 8, 2019, Plaintiff submitted six sick call requests. (*Id.* ¶ 11.) In addition, Defendant Owen noted that Plaintiff refused medication or medical treatment on five different occasions. (*Id.* ¶ 12.) She believes that Plaintiff's healthcare needs and concerns were adequately addressed while he was housed at Scotland. (*Id.* ¶ 14.)

In response to Defendant Locklear-Jones's motion for summary judgment, Plaintiff submitted medical documents along with grievance forms. (Docket Entry 69.) The inmate medical request refill forms indicate that some of the prescribed medications were to be refilled

9

automatically. (*See id.* at 1, 9.) However, the forms have May and June of 2020 dates and indicate that Plaintiff was housed at the Tabor Correctional Institution at that time. (*Id.*)

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-

serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

### 1. Plaintiff's Motion to File a Surreply

Plaintiff has filed a motion for leave and a document entitled "Plaintiff['s] Response to Defendant['s] Response." (Docket Entries 71, 72.) Plaintiff is essentially seeking to file a surreply to Defendant Locklear-Jones's reply to Plaintiff's Response in opposition to the motion for summary judgment. Plaintiff apparently seeks to do so because "[D]efendant [Locklear-Jones] did not seek leave from the court to respond to [P]laintiff['s] response to [D]efendant['s] motion for summary judgment." (Docket Entry 72 at 1.)[9] Plaintiff misinterprets the Local Rules of this Court which provide that a party requesting a summary judgment may file a timely reply addressing matters newly raised in the response. *See* L.R. 56.1(d). Here, Defendant Locklear-Jones did just that. (*See* Docket Entry 70.)

In addition, "[s]urreplies are generally disfavored[,]" *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 254 (M.D.N.C. 2007), and "[t]he Local Rules do not permit the non-moving party to submit a surreply brief unless the moving party raises an evidentiary objection in its reply brief." *Raiford v. N. Carolina Cent. Univ. ex rel. Bd. of Governors of the Univ. of N. Carolina*, No. 12CV548, 2015 WL 3823799, at *15 (M.D.N.C. June 19, 2015) (unpublished) (citing L.R. 7.3 & L.R. 7.6). Here, Defendant Locklear-Jones does not appear to be asserting an evidentiary objection in her reply brief. Rather, she is limiting her discussion to matters

---

[9] *See also* Docket Entry 71 (Defendant "did not seek a motion [for] leave seeking the last word[.]")

newly raised in the response. (*See* Docket Entry 70.) For these reasons, Plaintiff's motion to file a surreply is denied.[10]

## 2. Deliberate Indifference

Defendants Locklear-Jones and Owen both contend that Plaintiff cannot demonstrate that they were deliberately indifferent to his medical needs. (Docket Entry 61 at 9-14; Docket Entry 65 at 5-6.) The undersigned agrees. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]" *Id.* at 832 (internal quotation and citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "deliberate indifference to inmate health or safety." *Id.* at 834. In *Farmer*, the court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it.

*Id.* at 837.

---

[10] The undersigned notes that even if the Court considered Plaintiff's arguments in his surreply, it would not alter the recommendation regarding Defendant Locklear-Jones's motion for summary judgment.

12

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official action *must have* recognized that his actions were insufficient.

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation omitted) (emphasis in original). "The subjective component therefore sets a particularly high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Ultimately, deliberate indifference "requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). To constitute deliberate indifference, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).[11]

Here, viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Defendants Locklear-Jones and Owen were in violation of Plaintiff's Eighth Amendment rights. Regarding Defendant Locklear-Jones, at no time did she disregard the symptoms and/or concerns presented by Plaintiff. Contrary to Plaintiff's

---

[11] *Miltier* has been overruled by *Farmer* to the extent that it allowed a finding of deliberate indifference upon constructive knowledge, but it is still good law for the proposition cited.

allegations, Defendant Locklear-Jones took reasonable action and made professional judgment decisions and recommendations based on Plaintiff's complaints and/or his refusals and non-compliance with medication orders. Such actions on several instances were approved by Plaintiff's own primary care physician. The record does not reflect that Defendant Locklear-Jones ignored Plaintiff nor did she do anything to purposely cause harm to Plaintiff in her limited interactions with him. The fact that Plaintiff disagrees with Defendant Locklear-Jones's medical opinions is not sufficient to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). In other words, "[t]he courts will not intervene upon allegations of . . . difference of opinion." *United States v. Clawson,* 650 F.3d 530, 538 (4th Cir. 2011) (quoting *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977)); *see also Graham v. Hurst*, No. 5:13-CT-3109-F, 2015 WL 670321, at *4 (E.D.N.C. Feb. 17, 2015) (unpublished) ("[D]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.") (quotations and citation omitted).

Likewise, Defendant Owen was not deliberately indifferent to Plaintiff's medical needs. As previously stated, she had limited interaction with Plaintiff which she addressed, not ignored, Plaintiff's concern. She did not personally treat Plaintiff and given her position "[a]s a nurse, [Defendant Owen] is entitled to rely on the doctor's medical judgment as to the appropriate course of treatment for [Plaintiff's] conditions and cannot override the doctor's orders." *Miller v. Marsh*, No. 7:11CV00180, 2012 WL 844391, at *5 (W.D. Va. Mar. 12, 2012)

(unpublished). In addition, while delay or interference of a prescribed treatment may constitute an Eighth Amendment violation, *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009), the record does not support that Defendant Owen contributed to any delay nor does it support Plaintiff's contention that his conditions worsened as a result of a delay in treatment. *See Edwards v. Graham Cnty. Jail*, No. 1:16-CV-315-FDW, 2017 WL 5894496, at *6 (W.D.N.C. Nov. 29, 2017) (unpublished) ("[A] deliberate indifference inmate who contends 'that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.'") (quotations and citation omitted).

For these reasons stated above, the record demonstrates that there are no genuine issues of material fact regarding Plaintiff's claim of deliberate indifference against Defendants Owen[12] and Locklear-Jones. None of Plaintiff's documents filed in support of his opposition brief create a genuine issue of material fact here. He argues that his chronic medications were on automatic refill, and that Defendant Locklear-Jones did not meet with him prior to medication discontinuance. (*See* Docket Entry 68.) However, the documents upon which he relies to support his point are generally outside the time period of Defendant Locklear-Jones' specific treatment of Plaintiff, involve actions taken by other medical officials at other prison

---

[12] To the extent Plaintiff is asserting liability against Defendant Owen in her supervisory capacity, this claim also fails. Plaintiff would need to demonstrate "actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Carter v. Morris,* 164 F.3d 215, 221 (4th Cir. 1999) (quoting *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted). Furthermore, "the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw*, 13 F.3d at 799). Plaintiff cannot meet this standard here.

15

facilities, and in any event, generally fail to create a genuine issue of material fact on the issue of deliberate indifference. (*See* Docket Entry 69.) Further, to the extent Plaintiff's response brief newly asserts that Defendant Locklear-Jones caused another medication (Lisinopril) to be discontinued, this too is belied by evidence in the record demonstrating that it was provided to Plaintiff on February 1, 2019, and even after he was transferred. (*See* Docket Entry 62-17 at 6, 12, 14, 17; Docket Entry 62-20 at 27; Docket Entry 70-1.) For these reasons, Defendants' motions should be granted.

**3. Qualified Immunity**

Defendants Locklear-Jones and Owen also assert that they are entitled to qualified immunity. (Docket Entry 61 at 14-15; Docket Entry 65 at 7-8.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a

constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[13] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Here, Plaintiff has not demonstrated a violation of a constitutional right. Instead, the undisputed evidence illustrates that Defendants Locklear-Jones and Owen did not disregard, ignore, or delay Plaintiff's medical needs. Therefore, this Court concludes that Defendants are entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

**4. Punitive Damages**

Defendants Locklear-Jones and Owen also move to dismiss any claim for punitive damages. (Docket Entry 61 at 15-16; Docket Entry 65 at 8.) To the extent such damages may be available in § 1983 actions, the conduct must be such that it "involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." *Cooper v. Dyke,* 814 F.2d 941, 948 (4th Cir. 1987) (citing *Smith v. Wade,* 461 U.S. 30, 56 (1983)). Here, Plaintiff has not demonstrated constitutional violations nor any further facts to support evil motive or intent, or callous indifference to his serious medical needs.

---

[13] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001), in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." *Pearson*, 555 U.S. at 236.

Thus, claims for punitive damages against Defendants Locklear-Jones and Owen should be dismissed.

**5. Plaintiff's Motion for Default Judgment**

Finally, the Court will address Plaintiff's motion for default judgment. Plaintiff filed a motion for default judgment apparently against Defendant FNU Bullock, the sole remaining defendant in this action. (*See* Docket Entry 59.) Because Plaintiff has not previously obtained an entry of default against Defendant FNU Bullock, the Court construes his motion as a motion for entry of default. Entry of default is appropriate where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). However, "[a]bsent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over [a] defendant." *Koehler v. Dodwell,* 152 F.3d 304, 306 (4th Cir. 1998). In other words, "[i]t is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant." *Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996); *see also Ultimate Home Protector Pans, Inc. v. Camco Mfg., Inc.,* No. 1:19CV280, 2020 WL 4938344, at *1 (M.D.N.C. Aug. 24, 2020) (unpublished) ("The party moving for default judgment must still show that the defaulted party was properly served[.]") (citation omitted).

Here, this is Plaintiff's second attempt for entry of default against Defendant FNU Bullock. (*See* Docket Entries 29, 40.) As before, the record demonstrates that Defendant

18

Case 1:19-cv-00023-CCE-JLW Document 74 Filed 10/13/21 Page 18 of 20

FNU Bullock has not been served in this matter.[14] Upon previously denying entry of default, the undersigned instructed the North Carolina's Attorney General's Office to make a good faith effort to obtain Defendant FNU Bullock's last known address. (Docket Entry 40 at 8.) After receiving the requested information (Docket Entry 45), a summons was reissued (Docket Entry 47) and the U.S. Marshal made three unsuccessful service attempts (*see* Docket Entry 49). Thus, having not been served, entry of default is not proper against Defendant FNU Bullock. Plaintiff's motion will therefore be denied.

Beyond denying Plaintiff's motion, Defendant FNU Bullock should be dismissed from this action. Rule 4(m) of the Federal Rules of Civil Procedure provides that the Court must dismiss without prejudice unserved defendants after 90 days following the filing of the Complaint or order service be made within a specific time. Fed. R. Civ. P. 4(m). While the rule requires the Court to extend the time for service if Plaintiff shows good cause for his failure to timely serve, here, Plaintiff has not demonstrated good cause for the delay and the undersigned does not otherwise conclude that additional time is warranted. (*See* Docket Entry 51 at 2; Docket Entry 52.) As noted, the Marshal has unsuccessfully attempted to effectuate service at the address originally provided by Plaintiff in addition to the last known address pursuant to the Court's Order. Therefore, the undersigned will recommend that Defendant FNU Bullock be dismissed without prejudice.

---

[14] A service attempt was initially unsuccessful at the address provided by Plaintiff. (*See* Docket Entry 20.) The envelope indicated, "Attempted – Not Known, Unable to Forward." (*Id.* at 2.)

19

Case 1:19-cv-00023-CCE-JLW Document 74 Filed 10/13/21 Page 19 of 20

### III. CONCLUSION

For the reasons sated herein, **IT IS HERBY ORDERED** that Plaintiff's Motion for Leave to file a surreply (Docket Entry 71) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment (Docket Entry 59), construed as a motion for entry of default against Defendant FNU Bullock, is **DENIED**.

Further, **IT IS RECOMMENDED** that Defendants Locklear-Jones and Owen's motions for summary judgment (Docket Entries 60, 64) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendant FNU Bullock be dismissed without prejudice in this action.

Joe L. Webster
United States Magistrate Judge

October 13, 2021
Durham, North Carolina